Javier Torres (271538)
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email: javier.torres@stinson.com
Attorneys for HKB, Inc., dba Southwest Industrial Rigging

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, <br><br> Plaintiffs, <br><br> v. <br><br> HKB, INC., an Arizona corporation, doing business as SOUTHWEST INDUSTRIAL RIGGING; HARRY KENT BAKER, an individual; SCOTT WILLIAM MILLER, an individual; JAMES DOUGLAS WILSON, an individual, <br><br> Defendants. | No. 2:16-cv-08040-MWF-SK <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HKB, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** <br><br> Assigned to Hon. Michael W. Fitzgerald |

CORE/3008422.0002/130177244.6

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

1.   California is an improper forum....................................................................... 1

   A.   The defendants have no contact with California........................................ 2

   B.   The Funds' contracting party is an Arizona entity .................................... 3

   C.   The defendants did not contractually trigger California jurisdiction.......... 4

      1.   Southwest did not agree to be bound by the Memorandum Agreement . 4

      2.   The Memorandum's venue-selection provision is void and unenforceable
         8

2.   The Court should transfer venue to the District of Arizona. .......................... 9

   A.   This lawsuit could have been filed in Arizona.........................................10

   B.   The convenience of the parties weighs in favor of transfer......................11

   C.   The convenience of the non-party witnesses weighs in favor of transfer ..12

   D.   Public factors support transfer to the District of Arizona.........................13

      1.   Plaintiffs' choice of forum is entitled to no deference............................13

      2.   This lawsuit is governed by Arizona law ..............................................14

      3.   Arizona has a strong interest in deciding this case................................15

      4.   Litigating in California will be more expensive than in Arizona...........15

      5.   The key witness in this matter, Allen, is within the subpoena power of
      the District of Arizona, but not this District ...................................................16

      6.   All of Southwest's documents are in Arizona, not California ...............16

3.   Conclusion..................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adamson v. Armco, Inc.*,
  44 F.3d 650 (8th Cir.1995) .................................................................... 13

*Amazon.com, Inc. v. Nat'l Ass'n of Coll. Stores, Inc.*,
  826 F. Supp. 2d 1242 (W.D. Wash. 2011) ................................................ 3

*Bancroft & Masters*,
  223 F.3d 1082 (9th Cir. 2000) ................................................................. 3

*Blood Systems, Inc., v. Roesler*,
  972 F. Supp. 2d 1150 (D. Ariz. 2013) .................................................... 13

*Carijano v. Occidental Petroleum Corp.*,
  643 F.3d 1216 (9th Cir. 2011) ................................................................. 1

*Catch Curve, Inc. v. Venali, Inc.*,
  2006 WL 4568799 (C.D.Cal. 2006) ......................................................... 9

*Hanley v. Omarc, Inc.*,
  6 F. Supp. 2d 770 (N.D. Ill. 1998) ........................................................ 12

*HKB Inc. v. Bd. of Trustees for the Southwest Carpenter's Southwest Trust et al*,
  2:16-cv-03799-DJH (D. Ariz.), Dkt. No. 1 (complaint filed Nov. 2, 2016) ... 10

*HKB Inc. v. Bd. of Trustees for the Southwest Carpenter's Southwest Trust et al*,
  2:16-cv-03799-DJH (D. Ariz.), Dkt. Nos. 9, 10 (defendants served in Arizona
  case on Nov. 3, 2016) .................................................................................. 10

*Ida. Pac. Corp. v. Binex Line Corp.*,
  2016 WL 843254 (D. Ida. 2016) .............................................................. 8

*International Shoe Co. v. Washington*,
  326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) .................................... 3

*Jacobsen Const. Co., Inc. v. Teton Builders*,
  106 P.3d 719 (Utah 2005) ....................................................................... 8

*Jones v. GNC Franchising*,
    211 F.3d 495 (9th Cir. 2000)........................................................................ 8

*Keystone, Inc. v. Triad Systems Corp.*,
    292 Mont. 229 (1998) .................................................................................. 8

*Langley v. Prudential Mortg. Capital Co.*,
    546 F.3d 365 (6th Cir.2008)........................................................................ 11

*In re LMI Legacy Holdings, Inc.*,
    553 B.R. 235 (2016) .................................................................................... 13

*Metz v. U.S. Life Ins. Co. in City of New York*,
    674 F. Supp. 2d 1141 (C.D. Cal. 2009) ...................................................... 12

*New York State Teamsters v. Borello Trucking*,
    172 F.3d 38 (2d Cir. 1999)............................................................................ 3

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed.Cir.2009) ..................................................................... 12

*Ravelo Monegro v. Rosa*,
    211 F.3d 509 (9th Cir.2000)........................................................................ 12

*Romak USA, Inc. v. Rich*,
    384 F.3d 979 (8th Cir. 2004) ........................................................................ 4

*Saleh v. Titan Corp., et al.*,
    361 F.Supp.2d 1152 (S.D. Cal. 2005) ........................................................... 9

*Schneider Moving & Storage Co. v. Robbins*,
    446 U.S. 364 (1983)............................................................................... 3, 11

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir.1986).......................................................................... 3

*Syed v. Hercules Inc.*,
    214 F.3d 155 (3d Cir. 2000)........................................................................ 13

*Szegedy v. Keystone Food Prod., Inc.*,
    2009 WL 2767683 (C.D. Cal. 2009) .............................................................. 9

*United Steelworkers of America, AFL-CIO v. R. H. Bouligny, Inc.*,
    382 U.S. 145, 86 S.Ct. 2721 (1965) .............................................................. 3

CORE/3008422.0002/130177244.6

4

*Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*,
   222 F.3d 643 (9th Cir. 2000) ........................................................................... 13

*In re Yahoo! Inc.*,
   2008 WL 707405 (C.D. Cal. 2008) ............................................................... 11

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................. 9

29 U.S.C. § 1132(e)(2) ...................................................................................... 10

A.R.S. § 32-1129.05 .......................................................................................... 13

A.R.S. § 32-1129.05(a)(1) ................................................................................. 13

A.R.S. § 32-1195(A)(1) ...................................................................................... 8

A.R.S. § 32-1195(B) .......................................................................................... 13

ERISA ...................................................................................3, 10, 12, 13

Defendant HKB, Inc., dba Southwest Industrial Rigging ("Southwest") specially appears in this action for the limited purpose of moving the court to dismiss this lawsuit against Southwest based upon *forum non conveniens*. Southwest is an Arizona company with virtually no ties to California. Likewise, the individual defendants have no ties to California.

The Memorandum Agreement which Plaintiffs seek to enforce against Southwest (including the purported venue provision) is unenforceable because Southwest never agreed to be bound by the Memorandum Agreement. Indeed, the evidence shows that the former employee who purportedly signed the Memorandum Agreement was known by the Construction Union to lack authority to bind Southwest. Perhaps even more importantly for these purposes, however, the evidence and witnesses for this case are all located in California.

Alternatively, if the Court does not dismiss the Complaint, then this action should be transferred to the District of Arizona because 1) all the relevant parties are from Arizona, 2) all of the operative facts took place in Arizona, 3) Arizona has a fundamental governmental interest in this action (statutorily declaring that this dispute must be decided in Arizona), 4) the evidence (including all non-party witnesses) are in Arizona, and 5) a lawsuit is already pending in Arizona regarding the same issues as this case. For this reason, the Court should dismiss or transfer this case.

## 1. California is an improper forum.

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal."[1] The private-interest factors include "(1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and

---

[1] *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011); *see Piper Aircraft*, 454 U.S. at 255 n. 22; *Gilbert*, 330 U.S. at 506-507.

cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises [if applicable]; (4) all other factors that render trial of the case expeditious and inexpensive."[2] The public-interest factors are: (1) the administrative difficulties caused by court congestion, (2) the local interest in having localized controversies decided at home, and (3) the interest of having a case decided in a forum familiar with the applicable law.[3] Courts also consider the convenience to the parties, and the enforceability of the judgment.[4]

### A.   The defendants have no contact with California.

Southwest has virtually no contact with California. Southwest is an Arizona corporation doing business in Arizona as Southwest Industrial Rigging.[5] Southwest has four office locations, all of which are in Arizona: two in Phoenix, one in Flagstaff, and one in Tucson.[6] Southwest works in the construction industry and has a construction license, but it is only licensed in Arizona, not California.[7] Southwest does not own or lease any property in California.[8] Southwest has no staff in California.[9] It does not have a California bank account, mailing address, post office box, statutory agent, or telephone number, nor does it advertise or otherwise solicit work in California.[10] Southwest works almost exclusively in Arizona.[11] In fact, in the last three years, it has had only one contract in California. That lone transaction was for a mere $15,000, involving only three employees working less than three days.[12] Southwest is a multi-million-dollar entity with approximately 200 employees, so that solitary

---

[2] *Creative Tech.*, 61 F.3d at 703; *Gilbert*, 330 U.S. at 508.
[3] *Atlantic Marine*, 134 S. Ct. at 581 n.6.
[4] *Gulf Oil Corp.*, 330 U.S. at 508; *Lueck*, 236 F.3d at 1145; *Loya*, 583 F.3d at 664.
[5] *See* Exhibit 1, Declaration of James Douglas Wilson, ¶ 2.
[6] Wilson Decl. ¶ 3.
[7] Wilson Decl. ¶ 4.
[8] Wilson Decl. ¶ 5.
[9] Wilson Decl. ¶ 6.
[10] Wilson Decl. ¶ 7.
[11] Wilson Decl. ¶ 8.
[12] Wilson Decl. ¶ 9.

CORE/3008422.0002/130177244.6

2

transaction constituted significantly less than 1% of Southwest's annual work.[13] Southwest has never been party to a lawsuit in California.[14] In short, Southwest is an Arizona entity with almost no contact with California, and Southwest has never availed itself of California nor invoked the benefits of California law.

The individually named defendants are all Southwest employees who likewise have absolutely no contact with California. They do not own property in California, nor do they have an address or other contact information in California, or maintain any other meaningful contacts with California. In short, the Plaintiffs, representing various vacation and retirement funds (the "Funds"), could not carry their burden of proving that either Southwest or the individual defendants have ongoing contact within California that would "approximat[e] physical presence"[15] so that a California state court would have personal jurisdiction over them.[16]

**B.    The Funds' contracting party is an Arizona entity.**

The Funds brought this lawsuit solely as purported third-party beneficiaries of a contract that they allege was entered with Southwest. But the Funds themselves were not directly involved in the contract.[17] The purported parties to the contract are both Arizona residents. As stated above, Southwest is an Arizona entity. The other party to the purported contract is the Southwest Regional Council of Carpenters (the "Construction Union"). The Construction Union is not

---

[13] Wilson Decl. ¶ 10.
[14] Wilson Decl. ¶ 11.
[15] *Bancroft & Masters*, 223 F.3d 1082, 1086, (9th Cir. 2000) (*citing Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984)).
[16] *Amazon.com, Inc. v. Nat'l Ass'n of Coll. Stores, Inc.*, 826 F. Supp. 2d 1242, 1251 (W.D. Wash. 2011); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945).
[17] It is well established that as a third party beneficiary, Plaintiff can have no greater right than the Construction Union to enforce any promise. *Schneider Moving & Storage Co. v. Robbins*, 446 U.S. 364, 370 (1983); *see also New York State Teamsters v. Borello Trucking*, 172 F.3d 38 (2d Cir. 1999) (affirming dismissal of a fund's ERISA complaint where CBA had expired and the fund's right to contribution was no greater than that in the CBA).

CORE/3008422.0002/130177244.6

3

incorporated, so it has no place of incorporation. As such, the Construction Union is considered to be a resident of each state in which its members reside.[18] The Construction Union purportedly has hundreds of members who are Arizona residents and who meet at its Phoenix office. Thus, a contract between Southwest and the Construction Union does not implicate California jurisdiction.

### C. The defendants did not contractually trigger California jurisdiction.

#### 1. Southwest did not agree to be bound by the Memorandum Agreement.

The Funds presumably believe that this Court has jurisdiction over Southwest because their Memorandum Agreement referenced a document that purportedly contains a venue provision favoring California. The Funds, as the party seeking to litigate in this Court, has the burden of proving that Southwest consented to litigate in California. "Although a court may exercise personal jurisdiction over a defendant through the acts of his agent, a party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority."[19] The Funds cannot meet this burden because Tom Allen, who signed the Memorandum Agreement, never had authority to bind Southwest, and Southwest did not otherwise agree to the Memorandum.

Among other things, Southwest performs construction-related maintenance and repair work at the Palo Verde Nuclear Generating Station just west of Phoenix (the "Power Plant") twice a year for 4-6 weeks at a time.[20] Southwest had previously used carpenters provided by the Construction Union to supplement its workforce for the maintenance and repair work at the Power Plant,

---

[18] *United Steelworkers of America, AFL-CIO v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 2721 (1965).
[19] *Romak USA, Inc. v. Rich*, 384 F.3d 979 (8th Cir. 2004) (internal citation and quotation omitted).
[20] Wilson Decl. ¶ 12.
CORE/3008422.0002/130177244.6

4

but Southwest had never been required to sign a long-term union contract.[21] Rather, Southwest simply employed the individual Construction Union members on a piecemeal basis, paying the carpenters (and the Funds) for the work actually performed, but having no obligation beyond the temporary work provided at the Power Plant.[22]

In mid-2013, Tom Allen, a salesman for Southwest, told his supervisors at Southwest that the Construction Union gave him a document titled "Southwest Regional Council of Carpenters – Carpenters Memorandum Agreement 2012-2016" (the "Memorandum"), which the Construction Union wanted Allen to sign on Southwest's behalf.[23] Allen was only a salesman for Southwest, so the Construction Union had no reason to believe that Allen was authorized to sign the Memorandum. Because Tom Allen had no experience with such documents, had no authority to sign such documents, and indeed had never seen such documents, Allen asked his supervisors for direction.[24] His supervisors told him he did not have authority to enter such contracts, and indeed Southwest would not agree to the Memorandum.[25] Moreover, Southwest could not evaluate the issue further because the Memorandum referenced several other documents that Southwest had never seen and did not have access to.[26]

Despite having been explicitly told that he did not have authority to sign the Memorandum and that Southwest would not agree to the Memorandum, Allen signed the Memorandum on August 22, 2013. When signing the Memorandum, Allen was to state his name and corporate title to ensure he had actual authority to bind Southwest. Allen correctly identified himself merely as a salesman:

---

[21] Wilson Decl. ¶ 13.
[22] Wilson Decl. ¶ 14.
[23] Wilson Decl. ¶ 15.
[24] Wilson Decl. ¶ 16.
[25] Wilson Decl. ¶ 17.
[26] Wilson Decl. ¶ 18.

CORE/3008422.0002/130177244.6

5

*Tom Allen — Sales*.[27] Quite obviously, the Construction Union knew that a salesman would not have authority to sign a long-term union contract, particularly one that (as will be seen) potentially creates a multi-million-dollar exposure based upon the union-workers' piecemeal temporary work. To create the impression that Allen had authority to sign the Memorandum, Allen was required – presumably by the Construction Union – to sign another copy of the Memorandum, identifying him more broadly (in different handwriting) as a company representative: *Tom Allen — Local Rep*.[28] Southwest works almost exclusively in Arizona, so "Local Rep" is not a title Southwest used or recognized.[29]

Subsequent to Allen's signing of the Memorandum, and still unaware that Allen had signed the Memorandum, Southwest reiterated to Allen that he did not have authority to bind Plaintiff by signing such contracts on Plaintiff's behalf.[30] In the meantime, while still unaware that Allen had signed the Memorandum, Southwest used Construction Union carpenters to perform temp work at the Power Plant, just as it had been doing for years. Consistent with past practices, Southwest paid for all services rendered by the union carpenters, including paying the plaintiff Funds.[31]

Beginning November 2015—several years after Southwest first began hiring and paying for services provided by the Construction Union's carpenters (and more than two years after Allen signed the Memorandum)—the Funds purported to perform an "audit" regarding Southwest's payments to the Funds.

As a result of the "audit," the Funds demanded that Southwest make additional payments in excess of $490,000, for various health-care, training,

---

[27] Wilson Decl. ¶ 19; Ex. A to Wilson Decl.
[28] Wilson Decl. ¶ 20; Compl. Ex. 1.
[29] Wilson Decl. ¶ 21.
[30] Wilson Decl. ¶ 22.
[31] Wilson Decl. ¶ 23.

CORE/3008422.0002/130177244.6

vacation, and pension funds. This payment demand was not based upon any work performed by the Construction Union's carpenters. Rather, the Funds demanded payment solely based upon services *performed by Southwest's own employees*. Southwest's employees are not members of and have no affiliation with the Construction Union. Nevertheless, the Funds claimed that one of the documents incorporated into the Memorandum says Southwest must pay the Funds for all work performed by Southwest's employees even though the employees are not union members and do not receive union benefits. In other words, the Funds claim that because Southwest hired union carpenters for temporary work at the Power Plant, Southwest is required to pay the Funds for all work performed year-round by Southwest's non-union employees.

The Funds' demand by itself actually exceeds the value of all services ever provided by the union carpenters for that time period.[32] Neither Southwest nor Southwest's employees will receive any benefit from the health-care, training, pension, and vacation plans that the Funds claim Southwest must pay for. During the time that Southwest used carpenters provided by the Construction Union, neither the Construction Union nor the Funds ever brought to Southwest's attention any expectation that Southwest was liable for any of the payments that Funds ultimately demanded as a result of the "audits."[33]

The Memorandum does not create any enforceable rights for the union carpenters to be hired by Southwest. Rather, the Memorandum only purports to set the terms of employment—if (and only if) Southwest decided to hire union carpenters. After the Funds made their demand for additional money, Southwest immediately stopped hiring the union carpenters.[34]

Thus, although Allen was an employee of Southwest at the time he

---

[32] Wilson Decl. ¶ 24.
[33] Wilson Decl. ¶ 25.
[34] Wilson Decl. ¶ 26.
CORE/3008422.0002/130177244.6

purportedly signed the Memorandum, he was not authorized to sign the Memorandum.[35] Equally important, the Construction Union knew or should have known that Allen did not have authority to bind Southwest to the Memorandum, and Southwest has not ratified Allen's unauthorized act in signing the Memorandum. And since Southwest did not agree to be bound by the Memorandum, it necessarily follows that Southwest is not bound by a venue provision that was buried in a document referenced by the Memorandum.[36]

2.   *The Memorandum's venue-selection provision is void and unenforceable.*

Even if Southwest is bound by the Memorandum (it is not), and even if the Memorandum adequately identified California as the situs for this lawsuit (it did not), Southwest still is not subject to suit in California because the venue-selection provision is invalid. As a matter of public policy, the Arizona legislature has declared that every covenant or understanding that is "collateral to or affect[s] a construction contract" must be litigated in Arizona:

A. The following are ***against this state's public policy*** and are ***void*** and ***unenforceable***:

1. A provision, covenant, clause or understanding in, collateral to or affecting a construction contract that makes the contract subject to the laws of another state or that requires ***any litigation*** arising from the contract to be ***conducted in another state.***

. . .

B. Any mediation, arbitration or other ***dispute resolution proceeding*** arising from a construction contract for work performed in this state ***shall be conducted in this state***.[37]

As discussed above, the only reason Southwest hired the Construction Union carpenters was to provide construction services for the Power Plant in Arizona.

---

[35] Wilson Decl. ¶ 16, 17, 19, 22.
[36] *Romak*, 384 F.3d at 979.
[37] A.R.S. § 32-1195(A)(1) (emphasis added).

Indeed, the Construction Union admits in its Complaint that Southwest was "a contractor engaged in the ***construction*** industry"[38] and that Southwest "engaged [union] workers . . . [to] perform[ ]  labor on ***works of construction*** . . . [under] the term of the [Memorandum]."[39]  In other words, as alleged in the Complaint, the Memorandum either constitutes a construction contract or, at a minimum, the Memorandum is "collateral to or affect[s] a construction contract" under A.R.S. § 32-1195(A)(1).  Thus, the Memorandum's purported venue provision—which purportedly requires litigation in California—violates public policy and is invalid under Arizona law.  Even more important, because the construction work was performed in Arizona, all "dispute resolution proceeding[s]," including this litigation, must be conducted in Arizona.[40]

**2.      The Court should transfer venue to the District of Arizona.**

If this Court denies the motion to dismiss, it should nevertheless transfer

---

[38] Compl. ¶ 13 (emphasis added).

[39] Compl. ¶ 20 (emphasis added).

[40] *See, e.g., Keystone, Inc. v. Triad Systems Corp.*, 292 Mont. 229, 235 (1998) (where state statute "has been applied to invalidate forum selection clauses that would have the effect of forcing Montana residents to litigate disputes outside of Montana," holding that "provision at issue which requires that a Montana resident arbitrate disputes related to a contract to be performed in Montana at a location outside Montana is void because it violates Montana law."); *see also Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000) ("By voiding any clause in a franchise agreement limiting venue to a non-California forum for claims arising under or relating to a franchise located in the state, [the statute] . . . expresses a strong public policy of the State. . . . A provision, therefore, that requires a California franchisee to resolve claims related to the franchise agreement in a non-California court directly contravenes this strong public policy and is unenforceable."); *Ida. Pac. Corp. v. Binex Line Corp.*, 2016 WL 843254 *11 (D. Ida. 2016) ("An underlying policy in favor of upholding forum selection clauses . . . stresses the importance of upholding forum selection clauses which were bargained for by the parties. [When the forum-selection clause was not negotiated, the policies in favor of enforcing a forum-selection clause are no longer present]. Accordingly, [a party]'s lack of bargaining power qualifies as an exceptional circumstance to warrant non-enforcement of [a] forum selection clause."); *Jacobsen Const. Co., Inc. v. Teton Builders*, 106 P.3d 719, 725-26 (Utah 2005) (holding that policy behind Utah statute which "declares unenforceable any forum selection clause contained in a construction contract that requires litigation in a state other than Utah" would be best served by having litigation in Utah).

CORE/3008422.0002/130177244.6

this case to the District of Arizona. "For the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought."[41] The purpose of the venue-transfer statute is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."[42] "Thus, even when venue is proper where the action is pending, section 1404(a) [the venue-transfer statute] provides the Court with the discretion to transfer an action to a different venue."[43]

Analysis under § 1404(a) is two-fold. First, the defendant must establish that the matter "might have been brought" in the district to which transfer is sought.[44] Second, the court must consider the following three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice.[45] In analyzing the third factor, the "interests of justice," a number of factors are relevant, including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiffs choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiffs cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.[46] Virtually all of these factors compel a transfer of venue.

### A. This lawsuit could have been filed in Arizona.

This lawsuit plainly could have been filed in Arizona. In fact, Southwest has already filed a lawsuit in Arizona seeking a declaration judgment regarding

---

[41] 28 U.S.C. § 1404(a).
[42] *Saleh v. Titan Corp., et al.*, 361 F.Supp.2d 1152 (S.D. Cal. 2005).
[43] *Catch Curve, Inc. v. Venali, Inc.*, 2006 WL 4568799 (C.D.Cal. 2006).
[44] 28 U.S.C. § 1404(a).
[45] 28 U.S.C. § 1404(a).
[46] *Szegedy v. Keystone Food Prod., Inc.*, 2009 WL 2767683 (C.D. Cal. 2009).

all of the claims asserted by the Funds in this case. Although the complaint in this case was filed 5 days before the complaint in Arizona,[47] Southwest affected service on the Funds *11 days* before the Funds even attempted to serve Southwest in this case, so the Arizona court was the first to have perfected jurisdiction over the parties.[48] In fact, the Funds never even attempted to contact Southwest regarding this litigation until a week after Southwest had already served the Funds with the Arizona summons.

The Funds could have—and should have—filed this suit in Arizona. For ERISA claims, venue is proper in the district court in any of four locations: (1) where the plan is administered; (2) where the breach took place; (3) where a defendant resides; or (4) where a defendant may be found.[49] Three of those four alternatives point to Arizona. Southwest employed—and allegedly failed to pay— the union members in Arizona for services that provided in Arizona. All of the defendants reside in Arizona, and they can all be found here. Thus, this action clearly could have been brought in the District of Arizona.

### B. *The convenience of the parties weighs in favor of transfer.*

The convenience of the parties weighs heavily in favor of transfer: Southwest's principal place of business is in Phoenix, and Southwest has no offices, facilities, or personnel in California.[50] In fact, Southwest's office is located less than two miles from the District of Arizona's courthouse. Thus, Arizona is obviously more convenient for Southwest and the individual defendants (employees working in Southwest's corporate office). All of

---

[47] *Compare* Compl., Dkt. #1, filed Oct. 28, 2016, *with HKB Inc. v. Bd. of Trustees for the Southwest Carpenter's Southwest Trust et al*, 2:16-cv-03799-DJH (D. Ariz.), Dkt. No. 1 (complaint filed Nov. 2, 2016).

[48] *Compare* Dkt. No. 10 (HKB served on Nov. 14, 2016) *with HKB Inc. v. Bd. of Trustees for the Southwest Carpenter's Southwest Trust et al*, 2:16-cv-03799-DJH (D. Ariz.), Dkt. Nos. 9, 10 (defendants served in Arizona case on Nov. 3, 2016).

[49] 29 U.S.C. § 1132(e)(2).

[50] Wilson Decl. ¶ 2, 3, 5-7.

Southwest's anticipated party witnesses—particularly those who have knowledge regarding Allen's lack of authority to bind Southwest—reside in the Phoenix area.[51]

The Funds, in contrast, were not signatories to the Memorandum Agreement, were not part of negotiating the Memorandum, and were not involved in performance of the work under the Memorandum. They are nothing more than mere third-party beneficiaries or transferees of the Memorandum Agreement. Thus, they have no more rights than the Construction Union under the Memorandum Agreement.[52] Even so, Plaintiffs likely have few, if any, party witnesses who reside in California. Equally important, it obviously is not inconvenient for the Funds to litigate in Arizona because the Construction Union is officed in Arizona with hundreds if not thousands of members in Arizona, so the Funds are already engaged in business in Arizona. Even more important, the Funds audited Southwest and asserted their claim while Southwest remained exclusively in Arizona, so Arizona does not constitute an inconvenient forum.

### C.   The convenience of the non-party witnesses weighs in favor of transfer.

"The convenience of the witnesses is usually the most important factor to consider in deciding whether to transfer an action."[53] This factor points exclusively to Arizona. Tom Allen, the former Southwest employee who signed the Memorandum—and whose testimony will be crucial to this matter—resides in the Phoenix area.[54] Moreover, in Exhibit 3 of the Complaint, the Funds identified *fifteen* Southwest employees whose pay the Funds disputed during their audit. All fifteen of these Southwest employees live in the Phoenix area.[55] Furthermore,

---

[51] Wilson Decl. ¶ 27.
[52] *Schneider Moving & Storage Co. v. Robbins*, 446 U.S. 364, 370 (1983).
[53] *In re Yahoo! Inc.*, 2008 WL 707405, *3 (C.D. Cal. 2008).
[54] Wilson Decl. ¶ 28.
[55] Wilson Decl. ¶ 27.

eight of the twenty-four union members whose work gave rise to this claim reside in Arizona—more than any other state.[56] Thus, Arizona is a far more convenient forum for the non-party witnesses.

### D.    Public factors support transfer to the District of Arizona.

In addition to the private factors enumerated above, the court must consider the "public-interest factors and fairness that . . . come under the heading of 'the interests of justice.'"[57] These public-interest factors include such things as the local jurisdiction's interest in having localized issues decided at home and the forum's familiarity with the law that will govern the case.[58]

### 1.    Plaintiffs' choice of forum is entitled to no deference.

"[O]rdinarily, a plaintiff's choice of forum is entitled to deference. This is not the case, however, when . . . the operative facts have not occurred within the forum [or] the forum has no particular interest in the action."[59] Even in ERISA cases, courts will transfer venue when the plaintiff's choice of forum "lack[s] any significant contact with the underlying cause of action."[60] The Funds' claim in this case lacks sufficient contact with California to justify any deference the Fund's decision to sue in California.

All of the operative facts in this case occurred in Arizona, not California. Southwest is an Arizona entity working almost exclusively in Arizona. The Construction Union had a long history of providing construction services for the Power Plant in Arizona. The Memorandum was signed by Tom Allen in Arizona, as Tom Allen was a Southwest employee living in Arizona who did not travel to

---

[56] Wilson Decl. ¶ 29.

[57] *Langley v. Prudential Mortg. Capital Co.*, 546 F.3d 365, 370 (6th Cir.2008) (citation omitted).

[58] *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed.Cir.2009); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir.2000).

[59] *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009).

[60] *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998).

California to negotiate or sign the Memorandum.[61] And the Construction Union has never performed any work for Southwest in California.[62] Finally, nearly all of the material witnesses reside in Arizona, not California.[63]

The fact that the Funds choose to administer their accounts from California is of no significance, particularly since Southwest is purported to have contracted with the Construction Union, not the Funds, and Southwest had no role or choice in the Funds' decision to administer their program from Arizona. Moreover, the Funds are operated for the benefit of Construction Union carpenters who reside and work in Arizona.[64] Indeed, it was their Memorandum that gave rise to this litigation.

   2.   *This lawsuit is governed by Arizona law.*

Although the plaintiffs cite federal law (ERISA) in their complaint, ERISA principles are applied against a backdrop of Arizona law.[65] As stated previously, the Arizona legislature has said that all contracts "collateral to or affecting a construction contract" must be decided by Arizona law.[66] Indeed, the law makes any contractual choice-of-law provision void as against public policy.[67] Significant here, Arizona law will govern questions of contract formation and whether the Funds claim is barred by the statute of limitation.[68]

---

[61] Wilson Decl. ¶ 30.
[62] Wilson Decl. ¶ 12, 13.
[63] Wilson Decl. ¶ 27-29.
[64] Wilson Decl. ¶ 29.
[65] *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 646–47 (9th Cir. 2000) (courts look to "most analogous state statute" when "[t]here is no specific federal [ERISA] statute" on a given issue).
[66] A.R.S. § 32-1129.05.
[67] A.R.S. § 32-1129.05(a)(1).
[68] *Blood Systems, Inc., v. Roesler*, 972 F. Supp. 2d 1150, 1156-57 (D. Ariz. 2013) (finding that ERISA claim was barred by Arizona's one-year statute of limitations for employment contracts). *See also Syed v. Hercules Inc.*, 214 F.3d 155 (3d Cir. 2000) (plaintiff's ERISA claims barred by Delaware's one-year statute of limitations for employment disputes); *Adamson v. Armco, Inc.*, 44 F.3d 650, 652-54 (8th Cir.1995) (plaintiffs' ERISA claims barred under Minnesota's statute of limitations for wage claims).

3.    *Arizona has a strong interest in deciding this case.*

As discussed previously, Arizona has a strong interest in deciding this case because Southwest is an Arizona entity; the Memorandum was purportedly signed by Allen in Arizona, and all of the work performed under the Memorandum was performed in Arizona. Moreover, both Southwest and the Construction Union, which purportedly signed the Memorandum, are officed in Phoenix.[69] In fact, Arizona's legislature has declared as a matter of public policy that Arizona courts must decide this case based solely on the fact that the construction work occurred in Arizona. "Any . . . dispute resolution proceeding arising from a construction contract for work performed in [Arizona] shall be conducted in [Arizona]."[70]

In contrast, California has no real interest in providing a forum for this dispute. Nothing related to this Memorandum occurred in California, and Southwest never sought out California workers—the union merely provided workers to Southwest based on availability.[71] While Southwest focuses its business in Arizona, the Funds are in the business of reaching out to employers wherever the union gets work (including those in Arizona).[72] To the extent any activities occurred in California, they are related to collection and audit—events which did not give rise to the alleged breach, but are instead incidental to the alleged breach committed in Arizona.

4.    *Litigating in California will be more expensive than in Arizona.*

As discussed above, there are, at minimum, 22 Southwest employees and

---

[69] The Construction Union has an office located at 4547 W. McDowell Rd., Phoenix, AZ 85035. See http://www.swcarpenters.org/src-offices/   This is approximately 5.5 miles from the District of Arizona's courthouse.

[70] A.R.S. § 32-1195(B). This court must consider the public policies of both California and Arizona. *See In re LMI Legacy Holdings, Inc.*, 553 B.R. 235, 251 (2016) ("public interest factors [include] . . . policy policies of the fora.").

[71] Wilson Decl. ¶ 31.

[72] Exhibits 3 to the Complaint shows the Funds reached out to Southwest (in Arizona), not the other way around.

CORE/3008422.0002/130177244.6

union workers whose testimony will likely be relevant and who all reside in Arizona.[73] In addition, the three individual defendants reside in the Phoenix area.[74] If this case remains in California, that would require, at minimum, twenty-five people needlessly traveling to Los Angeles for trial. This factor weighs heavily in favor of transfer.

5.    *The key witness in this matter, Allen, is within the subpoena power of the District of Arizona, but not this District.*

As discussed above, one of the key witnesses in this matter is Allen, the former Southwest employee who signed the Memorandum. His testimony would be highly relevant to issues of actual authority, apparent authority, and would shed light on the negotiations regarding the Memorandum. Because he resides in the Phoenix area[75] and is no longer affiliated with Southwest, transferring this case to the District of Arizona is absolutely crucial so Southwest can present its case at trial.

6.    *All of Southwest's documents are in Arizona, not California.*

As discussed above, Southwest does business almost exclusively in Arizona, and all of its records—which are relevant to this matter—are located in Arizona, not in California.

**3.    Conclusion**

The Complaint against Southwest should be dismissed. Southwest is an Arizona entity with no relevant ties to California; Southwest cannot be bound by the terms of the Memorandum or the venue provision it purportedly incorporates; all of the important operative facts took place in Arizona; Arizona has declared that this case must be decided in Arizona as a matter of public policy; and litigation in California creates an unnecessary burden for the parties and make it more difficult to present evidence from witnesses who are all located in Arizona.

---

[73] Wilson Decl. ¶ 27, 29.
[74] Wilson Decl. ¶ 27.
[75] Wilson Decl. ¶ 28.

1  Besides a lawsuit covering the same issues as this lawsuit is already pending in

2  the federal district of Arizona, so this case should be dismissed for forum non-

3  convenience. In the alternative, the Court should transfer venue of this case to

4  Arizona.

5        RESPECTFULLY SUBMITTED  5th  day of December, 2016.

6                             **STINSON LEONARD STREET LLP**

7                  By:   /s/ Javier Torres

8                       Javier Torres
                        1850 North Central Avenue, Suite 2100

9                       Phoenix, Arizona 85004-4584
                        Attorneys for Southwest Industrial

10                      Rigging

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

1.     I am over 18 years of age and not a party to this action.  I am a resident of or employed in the county where the mailing took place.

2.     My residence or business address is: 1850 North Central Avenue, Suite 2100, Phoenix, Arizona  85004.

3.     On December 5, 2016 I mailed from Phoenix, Arizona the following documents:  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS or TRANSFER VENUE; DECLARATION OF JAMES DOUGLAS WILSON; EXHIBIT A.**

4.     I served the documents by enclosing them in an envelope and placing the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this businesses practice for collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5.     The envelopes was addressed and mailed as follows:

Daniel Shanley
DeCarlo & Shanley
533 South Freemont Avenue, Ninth Floor
Los Angeles, California 90071-1706

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  December 5, 2016

                                  /s/ Celia M. Guerrero
                                  Celia M. Guerrero