James E. Holland, Jr. (Admitted pro hac vice)
james.holland@stinson.com
Javier Torres (271538)
javier.torres@stinson.com
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Attorneys for HKB, Inc., dba Southwest Industrial Rigging

Nicholas J. Begakis (253588)
nick.begakis@limnexus.com
**LIMNEXUS LLP**
1055 West Seventh Street, 28th Floor
Los Angeles, California  90017
Tel : (213) 955-9500
Fax : (213) 955-9511

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, <br><br> Plaintiffs, <br><br> v. <br><br> HKB, INC., an Arizona corporation, doing business as SOUTHWEST INDUSTRIAL RIGGING; HARRY KENT BAKER, an individual; SCOTT WILLIAM MILLER, an individual; JAMES DOUGLAS WILSON, an individual, <br><br> Defendants. | No. 2:16-cv-08040-MWF-SK <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** <br><br> Date:  January 9, 2017 <br> Time:  10:00 a.m. <br> Place:  First Street Courthouse, <br> Courtroom 5A <br><br><br> Assigned to Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

**Page**

1.  The Funds' forum-selection clause is irrelevant and was never enforceable in any event. ........................................................... 1

   A.   Southwest never entered agreed to the forum-selection clause. ........................................................................................... 1

   B.   Southwest didn't ratify the Memorandum's forum-selection clause. ........................................................................................... 2

        1.   Southwest did not ratify the Memorandum by hiring union carpenters. ............................................................. 2

        2.   Southwest did not "sign up" for a benefits plan for its managers. ......................................................................... 4

   C.   The individual (employee) defendants never agreed to the forum-selection clause. ....................................................... 6

   D.   The forum-selection clause was never enforceable because it violates Arizona public policy. ........................................... 6

        1.   Arizona statutes voids the Funds' forum-selection clause. ............................................................................... 6

        2.   The Construction Union's Memorandum is a "construction contract." ........................................................ 7

   E.   The Funds' prior cases are irrelevant and have no preclusive effect ....................................................................................... 9

2.  The Court should dismiss this case or transfer venue to Arizona. ............. 10

   A.   The Funds' choice of forum is not entitled to deference. ................... 10

   B.   After correctly stating the factors, the Funds misstate and misapply every factor. ..................................................................... 11

        1.   The private factors all compel a transfer of this case to Arizona. ..................................................................... 11

        2.   The public factors all favor litigation in Arizona. ..................... 16

   C.   The first-to-file principle must yield to Arizona as the most convenient and suitable forum. ......................................................... 19

   D.   Defendants are not subject to personal jurisdiction in California. ............................................................................................ 20

   E.   The individual defendants (Southwest's employees) should be dismissed because they have no contact with California. ............. 23

3.  The Funds should not be granted leave to amend the Complaint. ............. 25

4.  Conclusion. ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamson v. Armco, Inc.*,
    44 F.3d 650 (8th Cir. 1995)........................................................................ 17

*All–Way Leasing, Inc. v. Kelly*,
    182 Ariz. 213, 895 P.2d 125 (1994) ........................................................... 2

*Artukovich v. Pacific States Cast Iron Pipe Co.*,
    78 Cal. App. 2d 1 (1947).............................................................................. 3

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
    571 U.S. ---, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013) ........................ 8, 9, 11

*Employers Mut. Cas. Co. v. Bartile Roofs*, 618 F.3d 1153 (10th Cir. 2010) ....... 14

*Blood Systems, Inc., v. Roesler*,
    972 F. Supp. 2d 1150 (D. Ariz. 2013) ........................................................ 17

*Calder v. Jones*,
    465 U.S. 783, 104 S.Ct. 1482 (1984) ..................................................... 22, 23

*Carpenters Southwest Admin. Corp. v. Adv. Arch. Metals, Inc.*,
    No. CV-07-06924 DDP (VBKx) (C.D. Cal. December 22, 2007) .................. 9

*Daimler AG v. Bauman*,
    134 S. Ct. 746, 187 L. Ed. 2d 624 (2014).................................................. 6, 21

*Dunlap v. Dean*,
    109 Cal. App. 300, 292 P. 991 (Cal. Ct. App. 1930) ...................................... 3

*F.T.C. v. Wright*,
    2:13-CV-2215-HRH, 2014 WL 1385111 (D. Ariz. Apr. 9, 2014) ................ 19

*Fergus v. Songer*,
    150 Cal. App. 4th 552, 59 Cal. Rptr. 3d 273 (2007)................................... 2, 5

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009)....................................................................... 25

*Hanley v. Omarc, Inc.*,
6 F. Supp. 2d 770 (N.D. Ill. 1998)........................................................ 10, 19

*United States ex rel. J-Crew Mgmt. v. Atlantic Marine Construction Co.*,
2012 U.S. Dist. LEXIS 182375 (W.D. Tex. Aug. 6, 2012)............................. 8

*Jones v. GNC Franchising*,
211 F.3d 495 (9th Cir. 2000).................................................................. 7, 8, 9

*Keystone, Inc. v. Triad Systems Corp.*,
292 Mont. 229 (1998) .................................................................................. 6

*Metz v. U.S. Life Ins. Co. in City of New York*,
674 F. Supp. 2d 1141 (C.D. Cal. 2009)...............................................10, 19, 20

*Pac. Car & Foundry Co. v. Pence*,
403 F.2d 949 (9th Cir. 1968)..................................................................... 19

*Phx. W. Holding Corp. v. Gleeson*,
18 Ariz. App. 60, 500 P.2d 320 (1972) ......................................................... 2

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915 (2016)......... 20, 25

*Rogers v. United States*,
CV-15-08143-PCT-JZB, 2015 WL 8479065 (D. Ariz. Dec. 10, 2015) ......... 12

*Schneider Moving & Storage Co. v. Robbins*,
446 U.S. 364 (1983)................................................................................. 11

*Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc.*,
No. CV-13-272-MWF (MANx) (C.D. Cal. April 2, 2013)............................. 9

*Syed v. Hercules Inc.*,
214 F.3d 155 (3d Cir. 2000)...................................................................... 17

*United Bank v. Mesa N.O. Nelson Co., Inc.*,
121 Ariz. 438, 590 P.2d 1384 (1979) ........................................................ 2, 5

*United Steelworkers Am., AFL-CIO v. R.H. Boulingny, Inc.*,
382 U.S. 145, 86 S. Ct. 2721 (1965) .......................................................... 16

*Walden v. Fiore*,
134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)....................................21, 22, 23, 24

*Wetzel v. Lou Ehlers Cadillac Group*,
    222 F.3d 643 (9th Cir. 2000) ........................................................................ 17

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................ 10

A.R.S. § 32-1129.05 ........................................................................1, 6, 8, 9, 18

**Other Authorities**

Restatement (Third) of Agency § 4.01 cmt. b. ................................................. 5

*See* Restatement (Second) Conflicts of Law § 188 .......................................... 18

National Law Journal, "Billing Rates Across the Country," Jan. 13, 2014,
    http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-
    the-Country?slreturn=20161128224023, lasts accessed Dec. 29, 2016 .......... 19

In its motion, Southwest explained that this litigation should not proceed in California because defendants lack sufficient contact with California to give this Court jurisdiction over the defendants, and the defendants never agreed to the union contract (or its forum-selection clause). Moreover, all of the witnesses and documents are in Arizona, and Arizona has a strong public policy demanding that such disputes be decided in Arizona. The individual defendants' joinder was even more compelling—they were only named in this lawsuit because they are employees of Southwest, and the plaintiffs don't even try to argue that they consented to suit in California. The Funds' Opposition does not weaken any of Southwest's arguments. Indeed, the Funds largely ignore many of the relevant facts. Thus, this Court should transfer this case to Arizona district court.

**1.     The Funds' forum-selection clause is irrelevant and was never enforceable in any event.**

Because Southwest has virtually no contact with California, the Funds lean heavily on a forum-selection clause that was buried deep in a document that was referenced by the Memorandum. Their reliance is misplaced for two reasons: (1) Southwest (and especially its employees) never agreed to the forum-selection clause and (2) the clause is invalid and unenforceable under A.R.S. § 32-1129.05.

**A.     *Southwest never agreed to the forum-selection clause.***

As explained in the Southwest's motion, Southwest never agreed to the Memorandum or the forum-selection clause it purportedly incorporates. The Funds do not even try to controvert this fact. Nor do the Funds controvert the fact that Tom Allen said he was only in "sales" when he signed the Memorandum, and the Construction Union had him sign as a "local rep" to create an air of legitimacy for his ultra vires signature. Thus, the Construction Union did not reasonably believe that Allen had authority to bind Southwest to the Memorandum. Since the Funds never challenged any of these facts regarding Allen's lack of authority to sign the Memorandum, these facts are now uncontroverted, so the forum-

selection clause is not binding.

    **B.**    ***Southwest didn't ratify the Memorandum's forum-selection clause.***

Unable to prove that Southwest actually agreed to the forum-selection clauses embodied in the Memorandum, the Funds argue that Southwest ratified the Memorandum, either by hiring union carpenters after Allen signed the Memorandum or by Southwest executives "signing up" for the Funds' benefit plans.[1] Neither argument has merit.

    **1.**    **Southwest did not ratify the Memorandum by hiring union carpenters.**

Ratification requires both an intent to ratify and knowledge of rights.[2] "[I]t is an inherent element of ratification that the party to be charged with it must have fully known what he was doing . . . '[T]he very essence either of an election or ratification is that it is done advisedly, with full knowledge of the party's rights.'"[3] The Funds submitted no evidence of either element.

To constitute ratification, Southwest's conduct must be "inconsistent with any other position than intent to adopt the [Memorandum]."[4] For this reason, the Funds cannot say that Southwest's use of the Construction Union's carpenters constitutes ratification of the Memorandum. The Funds do not dispute that Southwest had employed Union carpenters for years without signing a union contract. Nor did the Funds dispute that Southwest followed the same process to hire the union carpenters after Allen impermissibly signed the Memorandum as before. They likewise don't dispute that, until the Funds completed an audit and demanded an additional $500,000, Southwest had no knowledge that Allen had

---

[1] Opposition at 3:3-5, 9-12.

[2] *See All–Way Leasing, Inc. v. Kelly*, 182 Ariz. 213, 895 P.2d 125, 128 (1994); *Phx. W. Holding Corp. v. Gleeson*, 18 Ariz. App. 60, 500 P.2d 320, 326 (1972).

[3] *Fergus v. Songer*, 150 Cal. App. 4th 552, 571, 59 Cal. Rptr. 3d 273, 289 (2007); *United Bank v. Mesa N.O. Nelson Co., Inc.*, 121 Ariz. 438, 440, 590 P.2d 1384, 1386 (1979).

[4] *United Bank*, 121 Ariz. at 440, 590 P.2d at 1386.

signed the Memorandum, let alone had ever received or reviewed the many Trust documents supposedly incorporated into the Memorandum. Finally, the Funds do not dispute that Southwest stopped utilizing union carpenters as soon as Southwest was informed that the Funds claimed Southwest was bound by the Memorandum. In other words, as soon as Southwest possessed the requisite knowledge, it immediately stopped using union carpenters, so there is no basis for the Funds to argue ratification. Moreover, Southwest's temporary hiring of union carpenters, precisely the same way Southwest temporarily hired carpenters before the Memorandum, without knowing the Memorandum exists, is not "inconsistent with any other position than intent to adopt the [Memorandum]," as required for ratification."[5] Thus, the Funds' ratification argument fails.

The two cases cited by the Funds in their Opposition do not support ratification here. *Artukovich*[6] concerns a contract for the sale of goods, wherein an unauthorized manager accepted a contract that could only be approved by a corporate officer. Despite the missing signature, the company shipped the goods, accepted payment, and fully performed the contract. Similarly, the contract in *Dunlap*[7] was held to be ratified by the unauthorized agent's principal because the principal completed several transactions before arguing his agent was not authorized, thereby engendering the agent with "ostensible authority" to enter subsequent iterations of that contract with those counterparties.

This case couldn't be more different than either *Artukovich* or *Dunlap*. Instead of completing performance under the unauthorized Memorandum and paying the Funds, as *Artukovich* did, Southwest operated exactly the same way it

---

[5] United Bank, 121 Ariz. at 440, 590 P.2d at 1386.

[6] *Artukovich v. Pacific States Cast Iron Pipe Co.*, 78 Cal. App. 2d 1 (1947), cited at Opposition 9–10.

[7] *Dunlap v. Dean*, 109 Cal. App. 300, 307, 292 P. 991 (Cal. Ct. App. 1930), cited at Opposition 9–10.

did before the Memorandum when it did not know the Memorandum existed. And instead of repeating transactions after learning about the Memorandum, Southwest terminated its relationship with the Construction Union and has refused to employ its carpenters since. Thus, neither case supports a finding of ratification.

## 2. Southwest did not "sign up" for a benefits plan for its managers.

In its Opposition, the Funds claims that Southwest "signed up for a program allowing its managers to participate in the SWRCC sponsored benefit plans."[8] The Funds never explains how this is relevant to the Opposition, but far more important, the allegation is blatantly false. Neither Southwest nor its managers ever signed up for such a program, nor were any of them aware the Funds purported to offer such a program. Indeed, the Funds' allegation is based exclusively on the fact that Southwest submitted a one-page form saying its managers were "exempt from . . . reporting requirements" to the Funds.[9] Contrary to the Funds' allegations, that one-page form solely addresses exemptions from reporting requirements; it does not "sign up" anyone for anything. Indeed, it does not mention eligibility for benefits programs, nor does it mention that such programs exist. If Southwest's managers did actually qualify for a "benefit plan," as alleged by the Funds, that must have happened through some other document. Moreover, the Funds' Opposition contains a blatant misstatement. The Funds administrator merely avowed that the exempt employees *qualify* for benefits,[10] yet the Opposition morphs that avowal to say that Southwest "signed up" for those benefits.  Southwest never knew the union purported to offer a "benefit plan" for company managers; Southwest never knew the managers would be deemed to be eligible for such benefits; and Southwest did not want the purported benefit

---

[8] Opposition at 3:3-5.

[9] Objection Ex. 9.

[10] Watanabe Decl. ¶¶ 7-8.

plan.[11] For their part, Southwest's managers never received any such purported benefits, never knew they were deemed to be eligible to receive any purported benefits, and never knew such benefits existed.[12]

Even if the exemption form did "sign up" employees for benefits (it did not), there is still no evidence that Southwest accepted those benefits. As the form plainly states, the Southwest employee who signed the form was merely an administrative assistant who worked in payroll—not someone with any authority to bind Southwest to the Funds' purported contract. Thus, the Funds' argument that Southwest "signed up for a program allowing its managers to participate in the SWRCC sponsored benefits plans" is patently false and intentionally misleading. "The principal is not bound by a ratification made without knowledge of material facts about the agent's act."[13] As such, a payroll clerk's execution of a reporting-exemption form could never constitute Southwest's ratification of a $500,000 obligation that Southwest's officers never even knew about.

Finally, even if Southwest ratified the benefits options for managers (it did not), Southwest did not ratify the forum-selection clause. Again, ratification requires "full knowledge of all the material facts.'[14] Thus, even if Southwest's managers "signed up" for a benefits plan (they did not), that does not mean that Southwest knew of (or ratified) a forum-selection clause that would force Southwest to litigate in California, a state where Southwest does not do business. Indeed, Southwest did not know of the forum-selection clause until after this

---

[11] *See* Exhibit 1, Declaration of James Douglas Wilson ("Arizona Wilson Decl."), ¶ 19, Doc. 19-1, *HKB, Inc. v. Bd. of Trustees for the SW Carpenter's SW Trust*, No. 2:16-cv-03799-DJH (D. Ariz., Dec. 9, 2016).

[12] *See* Arizona Wilson Decl. ¶¶ 20, 21.

[13] Restatement (Third) of Agency § 4.01 cmt. b.

[14] *United Bank v. Mesa N.O. Nelson Co., Inc.*, 121 Ariz. 438, 440, 590 P.2d 1384, 1386 (1979); *Fergus v. Songer*, 150 Cal. App. 4th 552, 571, 59 Cal. Rptr. 3d 273, 289 (2007), *as modified on denial of reh'g* (June 1, 2007) (quoting *Brown v. Rouse*, 104 Cal. 672, 676, 38 P. 507 (1894).

litigation commenced, and the Funds do not argue otherwise, so Southwest could not possibly have had sufficient knowledge to ratify the forum-selection clause.

### C. The individual (employee) defendants never agreed to the forum-selection clause.

Even if Southwest accepted or ratified the forum-selection clause (it did not), the forum-selection clause still has no impact here. Three of the four defendants in this lawsuit are Arizona residents whose only tie with California is that they are employed by Southwest while Southwest is being sued in California. The evidence is uncontroverted that these individual defendants never agreed to the forum-selection clause. Indeed, they never even knew that the Memorandum existed. With three of the four defendants clearly not party to the forum-selection clause, the Funds cannot rely on that clause to keep this case in California.

### D. The forum-selection clause was never enforceable because it violates Arizona public policy.

#### 1. Arizona statutes voids the Funds' forum-selection clause.

Even if Southwest agreed to the Memorandum (it did not), Southwest is not subject to suit in California because the forum-selection provision is invalid. As a matter of public policy, the Arizona legislature has declared that every covenant or understanding that is "collateral to or affect[s] a construction contract" must be litigated in Arizona, and a contractual provision selecting another forum is void.[15] This means that neither Southwest nor its renegade salesman could agree to litigate in California even if they wanted to.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction,"[16] so courts reject forum-selection clauses that violate statutes like A.R.S. § 32-1129.05.[17] As the Ninth Circuit explained when enforcing a

---

[15] A.R.S. § 32-1129.05.

[16] *Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014).

[17] *See, e.g., Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000); *Keystone, Inc. v. Triad Systems Corp.*, 292 Mont. 229, 235 (1998) (when state

similar California statute for franchises, these statutes trump contrary forum-selection clauses. "By voiding any clause in a franchise agreement limiting venue to a non-California forum for claims arising under or relating to a franchise located in the state, [the statute] . . . expresses a strong public policy of the State. . . . A provision, therefore, that requires a California franchisee to resolve claims related to the franchise agreement in a non-California court directly contravenes this strong public policy and is unenforceable."[18] Thus, even if the Memorandum is binding on Southwest (it is not), the forum-selection clause is not.

2.    **The Construction Union's Memorandum is a "construction contract."**

Trying to avoid Arizona's statutory prohibition of the forum-selection clause, the Funds incredibly claim that "[t]he CBA and Trust Agreements are not 'construction contracts.'"[19] This argument is a surprising about face. Indeed, the Funds judicially admitted in their Complaint that the Construction Union's services under the Memorandum were for *works of construction* in Arizona: "EMPLOYER engaged workers who performed services covered by the AGREEMENTS [to] perform[ ] labor on *works of construction* within [Arizona] undertaken by EMPLOYER."[20] Without this judicial admission, the Memorandum itself is the best indicator of its meaning—it refers to "on-site *construction work* of the type covered by this Agreement."[21] With the contract-drafting party (the Construction Union) referring to the Memorandum as a construction contract, the Funds (nonparties to the contract) cannot argue

---

statute "has been applied to invalidate forum-selection clauses that would . . . forc[e] Montana residents to litigate disputes outside of Montana," provision that requires litigation "outside Montana is void because it violates Montana law").

[18] *Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000).

[19] Opposition at 18:16.

[20] Complaint at 5:24-27.

[21] Complaint Ex. 1 at 3 (emphasis added).

otherwise. Indeed, the Funds presented no evidence to suggest that the Memorandum was not a construction contract.[22] But even if the Memorandum is not a construction contract, it is undeniably "collateral to or affecting a construction contract," so it still triggers A.R.S. § 32-1129.05.

In a final ditch effort to avoid the statute, the Funds baselessly argue that "A.R.S. § 32-1129.05 would modify federal court jurisdiction."[23] That's a clear misstatement. Southwest is not trying to avoid federal court. Indeed, Southwest filed suit in the Arizona federal district court to declare the Memorandum invalid, and Southwest served the Funds with the summons from that court before the Funds even attempted to serve Southwest with this lawsuit. The statute precludes litigation in California court—whether state or federal. And as mentioned previously, the Ninth Circuit has said that such state statutes are enforced in federal court.[24]

The Funds' citation to *Atl. Marine Constr. Co. v. U.S. Dist. Court*,[25] is inapposite: the construction project at issue in *Atl. Marine* was located on a federal enclave. Under a lower-court ruling that was not appealed, the project was not subject to Texas law (including Texas's forum-selection statute), so the effect of the Texas statute was not considered.[26] It is important to note, however, that *Atl. Marine* explicitly said that its "analysis presupposes a contractually valid forum-selection clause."[27] Emphasizing the point, the Supreme Court reaffirmed that its analysis only applies "when the parties' contract contains a valid forum-

---

[22] Southwest doesn't concede that the Memorandum constitutes an enforceable contract.

[23] Opposition at 18:28-19:2.

[24] *Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000).

[25] 571 U.S. ---, 134 S. Ct. 568, 581 (2013), cited by the Funds at 6:7-20.

[26] *United States ex rel. J-Crew Mgmt. v. Atlantic Marine Construction Co.*, 2012 U.S. Dist. LEXIS 182375, *4-9 (W.D. Tex. Aug. 6, 2012).

[27] *Atl. Marine*, 571 U.S. ---, 134 S. Ct. at 581 n.5.

selection clause, which represents the parties' agreement as to the most proper forum."[28] The Funds' forum-selection clause is invalid because it (1) was never agreed to, and (2) is statutorily invalid. Thus, *Atl. Marine* is irrelevant here.

### E. The Funds' prior cases are irrelevant and have no preclusive effect

The Funds cite various cases about the general enforceability of a forum-selection clause. But none of cases involved a party who never agreed to the purported contract. Likewise, none of the cases involved a forum-selection clause that was statutorily void. Addressing that issue, the Ninth Circuit has held that forum-selection clauses cannot be enforced over a statute like A.R.S. § 32-1129.05. "[The statute] expresses a strong public policy of the State. . . . A provision, therefore, that requires [litigation in a different state] directly contravenes this strong public policy and is unenforceable."[29]

The Funds also cite two unpublished orders from other cases enforcing the Funds' forum-selection clauses against other entities.[30] But the Funds never explain why the two orders are relevant. Neither case involves an Arizona party, Arizona law, or the Arizona statute that invalidates the forum-selection clause (or any similar statute from another state). Nor does either case involve a party who never agreed to the Construction Union's contract. *Drywall Dynamics* simply addressed whether a subsequent Utah-governed contract superseded the Memorandum,[31] and *Advanced Architectural Metals* never even challenged the validity of the "mutually agreed" forum-selection clause.[32] Thus, the Funds have not cited any authority that would be relevant here.

---

[28] *Atl. Marine*, 571 U.S. ---, 134 S. Ct. 568, 581.

[29] *Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000).

[30] Opposition at 2:15, n.1 (citing decisions attached to Shanley Decl., Ex. 3).

[31] Civil Minute Entry, *Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc.*, No. CV-13-272-MWF (MANx) (C.D. Cal. April 2, 2013).

[32] Order, *Carpenters Southwest Admin. Corp. v. Adv. Arch. Metals, Inc.*, No. CV-07-06924 DDP (VBKx) (C.D. Cal. December 22, 2007).

**2.**   **The Court should dismiss this case or transfer venue to Arizona.**

Despite the Funds' statements to the contrary, to justify a transfer of venue, the Court need only make two findings: (1) the plaintiff could have originally filed suit in the proposed venue, and (2) considerations of convenience and interest weigh in favor of transfer.[33] As explained previously, the Funds plainly could have sued originally in Arizona. For the second element, there are two main considerations: case-specific (private) factors, and public (state interest) factors. Both sets of factors heavily militate in favor of Arizona. Southwest has no contact with California and does not do business in California. Indeed, this Court lacks jurisdiction over Southwest or its employees, so the case should be dismissed on that ground alone. Perhaps more important, all of the witnesses and documents are in Arizona. Moreover, Arizona has a strong public policy demanding that such disputes be decided in Arizona. For these reasons, this dispute should be decided in Arizona (where litigation is already proceeding), not California.

**A.**   ***The Funds' choice of forum is not entitled to deference.***

Without citing the relevant facts or legal principles, the Funds claim that the Court should defer to the Funds' choice of forum.[34] Although a plaintiff's choice of forum is ordinarily entitled to deference, that choice is afforded little to no deference when, as here, the operative facts did not occur within the plaintiff's chosen forum.[35] The Funds did not even attempt to rebut this principle, and instead resorted to parroting generalized rules without analysis.[36] But those general principles have no application here. Perhaps even more important, the Plaintiff's choice of forum is entitled to no deference when, as here, the selected

---

[33] 28 U.S.C. § 1404(a).

[34] Opposition at 6.

[35] Motion at 13:11-14:10 (quoting *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009); *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998)).

[36] Opposition at 5:11-15, 6:7-10, 6:26-7:1.

forum has no jurisdiction over the defendants, so the case should be dismissed.

The Funds also argued incorrectly that Southwest must carry a heavy burden. But the heavy burden only applies to a dismissal based upon *forum non conviens*, not to a transfer of venue. As the Supreme Court explained, "a defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. That is because of the 'harsh result' of that doctrine: Unlike a [motion to transfer venue], a successful motion under *forum non conveniens* requires dismissal of the case."[37]

### B.   *After correctly stating the factors, the Funds misstate and misapply every factor.*

The Funds summarily recited the public and private factors the Court must consider when adjudicating a motion to transfer venue or dismiss for *forum non conveniens*.[38] But immediately thereafter, the Funds not only misstate the law they had just cited, but also gloss over the facts, citing only meaningless generalities that mask the problems of litigating in California.[39]

### 1.   The private factors all compel a transfer of this case to Arizona.

The first private factor is the "residence of the parties and witnesses" (not just the plaintiff's residence, as cited by the Funds[40]). Both of the Memorandum's purported parties are Arizona residents, as are the individual employees that the Funds added as defendants. The Funds, in contrast, were not parties to the Memorandum, were not part of negotiating it, and were not involved in performance of the work under it. As an assignee, the Funds have no more rights than the assignor Construction Union.[41]

As for the witnesses, many courts have wisely recognized that the

---

[37] *Atl. Marine*, 571 U.S. ---, 134 S. Ct. 568, 581.

[38] Opposition at 5:17–6:6.

[39] Opposition at 6:26-8:19.

[40] Opposition at 6:26-7:1.

[41] *Schneider Moving & Storage Co. v. Robbins*, 446 U.S. 364, 370 (1983).

convenience of the witnesses is the most important factor to consider.[42] As the Funds aptly point out, the Court should consider the importance of a witness's testimony in addition to the number of witnesses.[43] Here, both the quantity and importance of the witnesses heavily favors Arizona.

Tom Allen, the former employee who purportedly signed the Memorandum for Southwest—and whose testimony will be crucial to this matter—resides in the Phoenix area. Moreover, as part of their audit, the Funds identified *fifteen* Southwest employees who will likely be called as witnesses and who all live in the Phoenix area. Under the Memorandum, the Funds can only claim payment for employees who performed a certain scope of work covered by the Construction Union, so the testimony of these employees regarding their scope of work will be necessary at trial to establish (or refute) the Funds' claim, and all fifteen of these Southwest employees live in Arizona. Furthermore, *eight* union members whose work gave rise to this claim reside in Arizona—more than any other state.[44] These workers will testify regarding Southwest's long history of hiring union carpenters without a long-term union contract. Finally, the most critical area of expected testimony: "those who have knowledge regarding Allen's lack of authority to bind Southwest"[45] all reside in Arizona. Not only does this Court lack the power to compel the testimony of those non-party witnesses, but travelling hundreds of miles from their homes in Arizona to Los Angeles is obviously a significantly greater hardship for these many non-party witnesses than Arizona. In contrast, the Funds do not even suggest that, let alone identify, any non-party witnesses who would find the Central District of California more

---

[42] *Rogers v. United States*, CV-15-08143-PCT-JZB, 2015 WL 8479065, at *4 (D. Ariz. Dec. 10, 2015) (collecting cases).

[43] Opposition at 22:3-11.

[44] Wilson Decl. ¶¶ 27-29, Motion Ex. 1; *see also*, Arizona Wilson Decl.

[45] Motion at 11.

convenient than the District of Arizona.

Desperate to create a nominal tie to California, the Funds identified three of its own employees who could possibly testify about which documents they reviewed in the Funds' audit or to serve as custodian of the Funds' records.[46] But none of these issues are critical. Indeed, the Funds have not explained how the scope of the audit or the documents held by the Funds will be relevant at all. Thus, there is likely no need for the Funds to have their employees testify.

The second factor is the "forum's convenience to the litigants," not, as the Funds misstate, whether "similar logistical considerations would apply in either forum."[47] The parties' convenience weighs heavily in favor of Arizona: Southwest has no offices, facilities, or personnel in California. In fact, Southwest's headquarters—located in downtown Phoenix—is only five minutes from the District of Arizona's courthouse. Southwest's three other offices are also located in Arizona—hundreds of miles away from this Court.[48] Thus, Arizona is obviously more convenient for Southwest. And of course, the individual defendants reside and work exclusively in Arizona.[49]

Equally important, it is not inconvenient for the Funds to litigate in Arizona. The Construction Union is officed in Arizona (less than five miles from the federal District of Arizona courthouse) with hundreds, if not thousands, of members in Arizona, so the Funds are already engaged in business in Arizona. Even more important, the Funds audited Southwest and asserted their claim while Southwest remained exclusively in Arizona, so Arizona is not an inconvenient forum for the Funds to operate.

To obscure the facts, the Funds generically lumped the third factor, "access

---

[46] Opposition at 22:19-28.

[47] Opposition at 7:2-4.

[48] Wilson Decl. ¶¶ 2-3, 11, Motion Ex. 1; *see also*, Arizona Wilson Decl.

[49] Wilson Decl. ¶¶ 27, Motion Ex. 1; *see also*, Arizona Wilson Decl.

to physical evidence and other sources of proof," and fourth factor, "whether unwilling witnesses can be compelled to testify" together as "evidentiary issues."[50] They further obfuscate the issue by focusing on the innocuous fact that they store their records in California. The Funds' physical records are entirely irrelevant; they will only show that Southwest has not paid the Funds for work performed by Southwest's nonunion employees. But that issue is not contested. All records regarding the Funds' claim for work performed by Southwest's employees are in Arizona, as are all the employees, and the Funds' audit already demonstrates that the Funds' claim depends exclusively upon Southwest's worksite records. Consequently, this factor, too, heavily favors Arizona.

Contrary to the Funds' statements,[51] the fourth factor, "whether unwilling witnesses can be compelled to testify," does not require Southwest to preemptively demonstrate that Tom Allen (or any other witness) will refuse to testify. In reality, to have this factor weigh in Southwest's favor, Southwest need show either that *if* "any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, *or* that the use of compulsory process would be necessary."[52] Here, because Tom Allen's testimony will be absolutely critical to determining the validity of the Memorandum, and since he must answer for acts that he performed in direct defiance of his employer's instructions, his demeanor will be important, so deposition testimony will be unsatisfactory. But even if not, as a non-party witness and Arizona resident residing hundreds of miles away from this Court, he is beyond the reach of a trial subpoena from this Court. Similarly, Southwest's non-party employees, for whom the Funds seek to be paid, reside in Arizona. Because the Funds can only assert a claim under the Memorandum if they were performing union-type services, their

---

[50] Opposition at 7:5-17.

[51] Opposition at 7:11-17.

[52] *Employers Mut. Cas. v. Bartile Roofs*, 618 F.3d 1153, 1168 (10th Cir. 2010).

testimony regarding their services will be crucial to this action, yet they are beyond this Court's subpoena power. Since the Funds were not party to the Memorandum and did not participate in the construction work, it is unclear what relevance (if any) the Funds three potential witnesses will have. But since they are all employees of the Funds, the Funds will have no problem securing their attendance at trial, wherever it is held.

Instead of directly addressing the fifth factor, "the cost of bringing witnesses to trial," the Funds merely state that the Court should consider the materiality and importance of the testimony, and not look at just numbers.[53] Southwest agrees—but both the materiality and the number of witnesses point exclusively to Arizona. Tom Allen, the former employee who purportedly signed the Memorandum for Southwest, resides in the Phoenix area. Moreover, as mentioned previously, the Funds identified fifteen Southwest employees whose scope of work will be at issue for the Funds' claim, and all fifteen of these Southwest employees live in Arizona. Furthermore, eight union members whose work gave rise to this claim reside in Arizona. Finally, the most critical area of testimony: "those who have knowledge regarding Allen's lack of authority to bind Southwest"[54] all reside in Arizona. In contrast, the Funds have only identified three Fund employees to possibly testify about the mundane issues of what documents they reviewed in the audit or serve as custodian of the Funds' records.[55] Again, none of these issues are critical, or even relevant. Thus, Arizona is a much less costly than California.

The Funds incorrectly dismiss the sixth and seventh factors, "the enforceability of the judgment" and "all other practical problems that make trial

---

[53] Opposition at 7:18-28.
[54] Motion at 11.
[55] Opposition at 22:19-28.

of a case easy, expeditious and inexpensive" as inapplicable.[56] Since Southwest has no assets or other contacts with California, any judgment against Southwest would need to be enforced in Arizona, not California. All potential problems regarding the enforcement of the judgment is removed by allowing the case to proceed in Arizona. With regard to "all other practical problems," considering that Southwest and the individual defendants all reside in Phoenix, attendance at hearings in California will require considerably more travel than Arizona. And since the Construction Union and the Funds have an ongoing presence in Arizona, they suffer no hardship by litigating in Arizona.

### 2. The public factors all favor litigation in Arizona.

The Funds also misstate and gloss over the five public factors.[57] The Funds cursorily claim that the first public factor, "local interest in the lawsuit," is met because California has an interest in ensuring "its residents may seek recovery for their economic damages."[58] But that's not the test. Every state has an interest in providing a forum for their residents to recover for their claims, so this factor is virtually meaningless. Nor do the Funds establish that Arizona somehow fails to provide them with an adequate forum for their claim. Moreover, the Funds don't identify which residents are relevant. The Funds are resident in every state where they have union members.[59] Relevant here, the Funds are operating for the benefit of union carpenters who reside and work in Arizona.[60] The fact that the Funds choose to administer their accounts from California is of no significance, particularly since the purported contract was entered by the Construction Union, not the Funds, and Southwest had no role, choice, or knowledge regarding the

---

[56] Opposition at 8:1-3.
[57] Opposition at 8:5-19.
[58] Opposition at 8:5-8.
[59] *United Steelworkers Am. v. R.H. Boulingny, Inc.*, 382 U.S. 145 (1965).
[60] Wilson Decl. ¶ 41, Motion Ex. 1; *see also*, Arizona Wilson Decl.

CORE/3008422.0002/130723502.3

location where the Funds chose to administer their program.

Moreover, California has no real interest in addressing this dispute. Nothing related to this Memorandum occurred in California, and Southwest never sought California workers—the Construction Union provided workers based on availability.[61] While Southwest focuses its business in Arizona, the Funds are in the business of reaching out to employers wherever the Construction Union gets work (including those in Arizona).[62] To the extent any activities occurred in California, they are related to collection and audit—events which did not give rise to the alleged breach, but are instead incidental to pursuing a claim for the alleged breach committed in Arizona. Since Southwest is a local business and substantial employer of Arizona residents for Arizona construction projects, and since this lawsuit arises from work on the Palo Verde nuclear power plant (Arizona's largest), Arizona has a local interest in the lawsuit.

The second factor, "the court's familiarity with the governing law," also favors Arizona over California. Although the Funds are correct that federal courts are equally familiar with federal statutes,[63] the Funds ignore the fact that ERISA principles are applied against a backdrop of Arizona law when "[t]here is no specific federal [ERISA] statute" on point.[64] Significant here, Arizona law will govern questions of contract formation and whether the Funds' claims against Southwest are barred by the statute of limitation.[65] The Arizona legislature has said that all contracts "collateral to or affecting a construction contract" must be

---

[61] Wilson Decl. ¶ 31, Motion Ex. 1; *see also*, Arizona Wilson Decl.

[62] Exhibits 3 to the California Complaint shows the Funds reached out to Southwest (in Arizona), not the other way around.

[63] Opposition at 8:9-12.

[64] *Wetzel v. Lou Ehlers Cadillac Group*, 222 F.3d 643, 646–47 (9th Cir. 2000).

[65] *Blood Systems, Inc., v. Roesler*, 972 F. Supp. 2d 1150, 1156-57 (D. Ariz. 2013) (finding that ERISA claim was barred by Arizona's one-year statute of limitations for employment contracts); *see also Syed v. Hercules Inc.*, 214 F.3d 155 (3d Cir. 2000); *Adamson v. Armco, Inc.*, 44 F.3d 650, 652-54 (8th Cir. 1995).

1  decided by Arizona law, and the law makes any non-Arizona choice-of-law

2  provision void as against public policy.[66] And even without its statutory

3  expression of public policy, Arizona has the greatest interest in applying its law to

4  the facts alleged in this case.[67] This Court is undoubtedly less familiar with

5  Arizona law (and less interested in opining on it) than the District of Arizona.

6          The third and fourth factors, "the burden on local courts and juries" and

7  "congestion in the court," also support Arizona. California residents have little

8  interest in acting as jurors to determine whether Arizona union members can

9  exact more money from an Arizona entity for services provided by Arizona

10 employees while working on Arizona construction projects. There is no reason to

11 burden the California judiciary or its jury pool with this lawsuit. Arizona, on the

12 other hand, *wants* to provide a forum for this dispute. Indeed, it has declared as a

13 matter of public policy that this dispute *must* be decided in Arizona.

14         The Funds incorrectly try to create a California tie through the fifth factor,

15 "the costs of resolving a dispute unrelated to a particular forum."[68] California's

16 only link to this lawsuit is that a party to the Memorandum (the Construction

17 Union, officed in Arizona) purportedly assigned its rights to the Funds. The

18 Funds' argument that this lawsuit should proceed in California on that ground is

19 akin to saying that if the Funds sold their claim to a foreign debt-collector, then

20 Southwest would suddenly be subject to litigation in that foreign country. Such a

21 proposition is absurd. Moreover, even if this case proceeds in California, the

22 Funds will still be forced to repeatedly travel to Arizona for depositions. Thus, if

23 this Court keeps this action, everyone bears significant costs litigating this dispute

24 unrelated to the California forum.

25         In sum, the private factors and the public factors overwhelmingly support

26

27 ---

[66] A.R.S. § 32-1129.05 & -1129.05(a)(1).
[67] *See* Restatement (Second) Conflicts of Law § 188.
[68] Opposition at 8:17-19.

litigation in Arizona, not California. If the Funds are really concerned about costs, they should embrace an Arizona forum. The witnesses are in Arizona; the documents are in Arizona; and Arizona litigators tend to cost less than their California counterparts.[69] So the Court should dismiss this lawsuit or transfer venue for this lawsuit to be consolidated with the case already proceeding in the Arizona federal district court.

### C.    The first-to-file principle must yield to Arizona as the most convenient and suitable forum.

The Funds argue that because they filed suit in California five days before Southwest filed suit in Arizona, this Court should retain jurisdiction (even though Southwest served the Funds several days before the Funds attempted to serve Southwest).[70] But the first-to-file preference is not an absolute rule. Although "a plaintiff's choice of forum is entitled to deference, this is not the case . . . when . . . . the operative facts have not occurred within the forum [or] the forum has no particular interest in the action."[71] Even in ERISA cases, courts transfer venue when the plaintiff's choice of forum "lack[s] any significant contact with the underlying cause of action."[72]

Far more important, the first-to-file principle is inapplicable to this motion. Southwest does not ask this Court to stay its proceedings and await the results of the Arizona action, as contemplated by the first-to-file principle. Rather, Southwest seeks to transfer this action to the District of Arizona. The first-to-file

---

[69] *See* National Law Journal, "Billing Rates Across the Country," Jan. 13, 2014, http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country?slreturn=20161128224023, lasts accessed Dec. 29, 2016.

[70] Opposition at 15–17.

[71] *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009) (punctuation modified); *see also Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *F.T.C. v. Wright*, 2:13-CV-2215-HRH, 2014 WL 1385111, at *2 (D. Ariz. Apr. 9, 2014) (collecting cases).

[72] *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998).

CORE/3008422.0002/130723502.3

principle does not permit the Funds to ignore the fact that California is an improper venue. In other words, even if Southwest never filed suit in Arizona, this lawsuit should still be transferred. The fact that Southwest filed suit in Arizona does not suddenly obviate the venue inquiry. Put another way, the first-to-file principle, such as it is, yields to the fact that Arizona is the most convenient and suitable forum. And again, a plaintiff's chosen forum is entitled to virtually no deference when the underlying events occurred elsewhere.[73]

### D.   Defendants are not subject to personal jurisdiction in California.

The Funds incorrectly claim they "need only make a prima facie showing of jurisdiction to avoid the defendants' motion to dismiss."[74] But to avoid dismissal, the Funds "may *not* simply rest on the bare allegations of the complaint," but must actually *prove* that this Court has jurisdiction.[75] Failing to meet this obligation, the Funds' rest their jurisdictional argument solely on unadorned allegations, ignore Southwest's copious controverting evidence, and offer no admissible evidence tying any of the defendants to California.[76]

In its Motion, Southwest plainly stated that the defendants had no significant contacts with California, so a California court does not have personal jurisdiction over them.[77] The Funds' lengthy Opposition fails for two reasons (1) the Funds incorrectly cite an outdated and expansive concept of specific jurisdiction that the Supreme Court has since rejected, and (2) the Funds mislead the Court regarding the facts in this case.[78]

In 2014, the United States Supreme Court unanimously issued two

---

[73] *Metz*, 674 F. Supp. 2d at 1146; *Hanley*, 6 F. Supp. 2d at 775.

[74] Opposition at 9:9-12.

[75] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915, 193 L. Ed. 2d 793 (2016) (emphasis added).

[76] *Compare* Opposition and Opposition at 12:8-19, 13:14-16, *with* Motion.

[77] Motion at 3:5-12.

[78] Opposition at 12:4-14:14.

opinions—both reversing the Ninth Circuit's expansive views of personal jurisdiction.[79] First, in *Daimler AG v. Bauman*, the Supreme Court reaffirmed that the Due Process Clause of the Fourteenth Amendment limits the extent of personal jurisdiction, even where a defendant otherwise has systematic contacts with and does business in the forum jurisdiction.[80] Then, in *Walden v. Fiore*, the Supreme Court clarified that for specific jurisdiction, it was not enough that the defendant's conduct had some relationship with the forum. "[T]he defendant's suit-related conduct must create a substantial connection with the forum State."[81]

Determining whether the defendants have a substantial connection with the forum statue involves two elements: ***First,*** "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State. . . . The unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."[82] Thus, for example, the Supreme Court has "rejected a plaintiff's argument that a Florida court could exercise personal jurisdiction over a trustee in Delaware based solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there."[83] "Put simply, [no matter how] significant the plaintiff's contacts with the forum may be, those contacts cannot . . . determin[e] whether the defendant[ ]" is subject to suit in the forum.[84] Applying that principle here, Southwest and its employees cannot be sued in California simply because the Funds are purportedly domiciled in California and its benefit plans are

---

[79] *Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014); *Walden v. Fiore*, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).

[80] *Daimler AG v. Bauman*, 134 S. Ct. 746, 751–52 (2014).

[81] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

[82] *Walden*, 134 S. Ct. at 1122 (punctuation modified).

[83] *Walden*, 134 S. Ct. at 1122.

[84] *Walden*, 134 S. Ct. at 1122.

1  administered from there.

2      ***Second***, "[the] 'minimum contacts' analysis looks to the defendant's

3  contacts with the forum State itself, not the defendant's contacts with persons

4  who reside there. . . . [T]he plaintiff cannot be the only link between the

5  defendant and the forum. Rather, it is the defendant's conduct that must form the

6  necessary connection with the forum State."[85] Here, the defendants' only contact

7  with California is that the Funds (nonparty assignees of the Memorandum)

8  decided to pursue a claim against them in California. The Supreme Court

9  conclusively said this was not enough to trigger jurisdiction: "If the question is

10  whether an individual's contract with an out-of-state party *alone* can

11  automatically establish sufficient minimum contacts in the other party's home

12  forum, we believe the answer clearly is that it cannot."[86]

13      The Funds' citation to *Calder v. Jones*, *Davis v. Metro Productions, Inc.*,

14  and *Dole Food Co. v. Watts* are inapposite.[87] All three of those cases involved

15  intentional torts (defamation and fraud) specifically directed at the forum state,

16  whereas the Funds bring this claim solely because the Arizona-based

17  Construction Union assigned the Funds its purported rights after Southwest

18  allegedly hired Construction Union carpenters for an Arizona project—Southwest

19  did not purposefully avail itself to jurisdiction in California.

20      The Funds are likewise wrong to argue that the defendants are subject to

21  California jurisdiction simply because the Funds purportedly suffered harm in

22  California. In *Walden*, the Supreme Court held that personal jurisdiction is not

23  triggered merely by the injury occurring in the forum: "Relying on *Calder,*

24

25  [85] *Walden*, 134 S. Ct. at 1122 (quotations and citations omitted).

26  [86] *Walden*, 134 S. Ct. at 1122-23 (quotations and citations omitted).

27  [87] Opposition at 12-14 (citing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482 (1984); *Davis v. Metro Productions, Inc.*, 885 F.2d 515 (9th Cir. 1989); *Dole*

28  *Food Co. v. Watts*, 303 F.3d 1104 (9th 2002)).

[Plaintiff]s emphasize that they suffered the 'injury' caused by [defendant]'s allegedly tortious conduct . . . while they were residing in the forum. This emphasis is likewise misplaced. . . . [M]ere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[88] The same analysis applies here. Thus, even if *Calder*, *Davis*, and *Dole* could previously have been construed as triggering jurisdiction based upon the place of injury, *Walden* now makes clear that injury to a forum resident is not a sufficient connection to create personal jurisdiction.

### E. The individual defendants (Southwest's employees) should be dismissed because they have no contact with California.

Even if Southwest could be subject to suit in California state courts (it cannot), the individually-named defendants/employees cannot. As the Supreme Court explained, "The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction. . . . Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on . . . contacts he makes by interacting with other persons affiliated with the State."[89] The Funds cannot circumvent this constitutional requirement by alleging that the employees engaged in tortious conduct—even intentional torts. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."[90] In other words, the Funds must prove that the individuals themselves intentionally directed their conduct to California. As explained by the Supreme Court when reversing the

---

[88] *Walden*, 134 S. Ct. at 1125.
[89] *Walden*, 134 S. Ct. at 1123.
[90] *Walden*, 134 S. Ct. at 1123.

Ninth Circuit, "The Court of Appeals reached [the wrong] conclusion by shifting the analytical focus from [defendant]'s contacts with the forum to his contacts with [Plaintiffs]. . . . This approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. . . . It also obscures the reality that none of [defendant]'s challenged conduct had anything to do with [the forum] itself."[91]

Walden also disposes of the Funds' argument that the defendants should be subject to suit in California because they were deprived of payment in California. "[Plaintiffs] (and only [plaintiffs]) lacked access to their funds in Nevada not because anything independently occurred there, but because Nevada is where [plaintiffs] chose to be at a time when they desired to use the funds seized by petitioner. Respondents would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had. . . . [T]he effects of [defendant]'s conduct on respondents are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction."[92] In sum, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State. . . . [T]he mere fact that his conduct affected plaintiffs [in] the forum State does not suffice to authorize jurisdiction."[93] Similarly, contacts with the forum that originate from the plaintiff or third parties, rather than from the defendants, do not constitute contacts that will trigger jurisdiction.[94] Contacts originating from plaintiff representatives "[are] precisely the sort of 'unilateral activity' of a third party that cannot satisfy the requirement of contact with the forum State."[95] Thus, the

---

[91] *Walden*, 134 S. Ct. at 1124-25.

[92] *Walden*, 134 S. Ct. at 1125.

[93] *Walden*, 134 S. Ct. at 1126.

[94] *Walden*, 134 S. Ct. at 1125.

[95] *Walden*, 134 S. Ct. at 1125.

defendants, and especially the individual/employee defendants, should be dismissed for lack of personal jurisdiction.

**3.      The Funds should not be granted leave to amend the Complaint.**

The Funds bizarrely request leave to amend in lieu of dismissal. The Funds offer no explanation, however, as to how amending their complaint could possibly transform California into a proper forum. In fact, the inquiry for this motion does not focus on the Funds' allegations. To the contrary, the venue inquiry focuses on proven facts and does "*not* simply rest on the bare allegations of the complaint."[96] Since the plaintiffs' allegations are not relevant to this Court's inquiry, amending the complaint would be futile.[97]

**4.      Conclusion.**

The Complaint against Southwest and its individual employees should be dismissed. The defendants have no contacts with California to trigger personal jurisdiction in this Court. Equally important, Southwest never agreed to the Memorandum or the Funds' forum-selection clause, and the forum-selection clause is void in any event. All of the operative facts took place in Arizona; the dispositive witnesses (more than two dozen of them) and documents are all located in Arizona; the State of Arizona has declared that this case must be decided in Arizona as a matter of public policy; and litigation in California creates an unnecessary and oppressive burden for both discovery and trial. For these reasons, this case should be dismissed. In the alternative, the Court should transfer venue of this case to Arizona, where a lawsuit covering these same issues is already pending in the District of Arizona.

---

[96] *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915, 193 L. Ed. 2d 793 (2016) (emphasis added).

[97] *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

1    RESPECTFULLY SUBMITTED _29th_ day of December 2016.

2                                                    **STINSON LEONARD STREET LLP**

3

4                          By:    /s/ James E. Holland, Jr.

5                                 James E. Holland, Jr.
                                  Javier Torres
                                  1850 North Central Avenue, Suite 2100
6                                 Phoenix, Arizona 85004-4584
                                  Attorneys for Southwest Industrial Rigging

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORE/3008422.0002/130723502.3

26

# PROOF OF SERVICE

1.    I am over 18 years of age and not a party to this action.  I am a resident of or employed in the county where the mailing took place.

2.    My residence or business address is: 1850 North Central Avenue, Suite 2100, Phoenix, Arizona  85004.

3.    On December 29, 2016 I mailed from Phoenix, Arizona the following documents: **REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE.**

4.    I served the documents by enclosing them in an envelope and placing the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this businesses practice for collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5.    The envelope was addressed and mailed as follows:

Daniel Shanley
DeCarlo & Shanley
533 South Freemont Avenue, Ninth Floor
Los Angeles, California 90071-1706

I declare under penalty of perjury that the foregoing is true and correct.


Dated:   December 29, 2016

/s/ Celia M. Guerrero
Celia M. Guerrero